**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| YAMAHA MOTOR FINANCE CORPORATION, U.S.A., a Delaware corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>MOTORCYCLES OF MANCHESTER, INC., a New Hampshire corporation; MOMS MIDDLESEX LLC, a Massachusetts limited liability corporation; MOMS NORTHAMPTON LLC, a Massachusetts limited liability corporation; WHEEL FREEDOM LLC, a New Hampshire limited liability company,<br><br>*Defendants*. | Civil Action No. |

**VERIFIED COMPLAINT**

Plaintiff Yamaha Motor Finance Corporation, U.S.A. ("Yamaha"), by and through its counsel of record, states as follows for its Complaint against Defendants Motorcycles of Manchester, Inc. ("MOM Inc."), MOMS Middlesex LLC ("Middlesex LLC"), MOMS Northampton LLC ("Northampton LLC") and Wheel Freedom LLC ("Wheel Freedom," together with MOM Inc. Middlesex LLC and Northampton LLC, referred to as the "Dealerships").

**PARTIES**

1. Yamaha is a Delaware corporation with its principal place of business located in Cypress, California.

2. MOM Inc. is New Hampshire corporation with its principal place of business located at 98 Willow Street, Manchester, NH 03103.

3. MOM Inc. has five business locations:

| **Doing Business As Name** | **Location** |
|---|---|
| MOMS Foxboro | 1000 Washington St., Foxboro MA 02035 |
| MOMS Jericho | 461 Main St., Gorham NH 03581 |
| MOMS Manchester | 98 Willow Street, Manchester NH 03103 |
| MOMS Topsham | 70 Topsham Fair Mall Rd., Topsham ME 04086 |
| MOMS Enfield | 27 Palomba Dr., Enfield CT 06082 |

4. Middlesex LLC, d/b/a MOMS North Chelmsford, is a Massachusetts limited liability company with its principal place of business located at 23 Middlesex Rd., N Chelmsford MA 01879.

5. Northampton LLC, d/b/a MOMS Northampton, is a Massachusetts limited liability company with its principal place of business located at 216 N King St., Northampton, MA 01060.

6. Wheel Freedom, d/b/a Freedom Cycle, is a New Hampshire limited liability company with its principal place of business located at 110 Manchester St., Concord NH 03301.

7. Joel H. Wheeler Jr. ("Wheeler") is an individual resident of the State of Massachusetts. Wheeler is the chief executive and principal owner of the Dealerships.

## JURISDICTION AND VENUE

8. The jurisdiction of the Court over the subject matter of this action is predicated on diversity jurisdiction as defined by 28 U.S.C. §1332(a). The amount in controversy, exclusive of interest and costs, exceeds $75,000.00 and the claims are between citizens of different states.

9. Plaintiff alleges damages in the approximate amount of $2,794,130.11 exclusive of attorneys' fees. Interest and other charges continue to accrue.

10. Yamaha is a citizen of Delaware where it is incorporated. Yamaha is also a citizen of California where its principal place of business is located.

11. MOM, Inc. is citizen of New Hampshire where it was incorporated and where its principal place of business is located.

12. For purposes of determining subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a)(1), an LLC is a citizen of every state of which its owners/members are citizens. *BRT Mgmt. LLC v. Malden Storage LLC,* 68 F.4th 691, 694 (1st Cir. 2023).

13. Wheeler is an individual who is a citizen of the state of Massachusetts domiciled in Westwood, Norfolk County, Massachusetts, 02090.

14. Mom, Inc. and Wheeler comprise 100% membership of Northampton LLC and Wheel Freedom. Wheeler is the 100% member of Middlesex LLC. Therefore, for jurisdictional purposes, Northampton, LLC and Wheel Freedom are citizens of Massachusetts and New Hampshire and Middlesex LLC is a citizen of Massachusetts, and complete diversity exists with Yamaha.

15. This Court has both subject matter and personal jurisdiction over all Defendants because they (a) have continuous and systematic contacts with Maine; and/or (b) have purposefully availed themselves of the privilege of conducting business in Maine. Further, the events, transactions, and omissions giving rise to the claims in this action occurred in Maine.

16. Venue is proper under 28 U.S.C. §1391 as a substantial part of the events or omissions giving rise to the claims occurred in Maine.

## **FACTS**

### **A. *General Allegations***

17. Yamaha provides floor plan financing, which is also known as “flooring” or inventory lending. By floor plan financing, dealers receive loans from Yamaha to pay manufacturers for the purchase of inventory. When a dealer sells “floored” inventory, it must repay the loan owed to Yamaha for that inventory within deadlines contractually agreed to by the dealer. Yamaha has a security interest in the inventory to secure the loan payment. If the dealer fails to repay the flooring loan after the inventory is sold, in effect converting the borrowed loan funds to its own use, the dealer breaches its financing agreement with Yamaha and is said to be “sold out of trust” or “SOT.” Because the floored inventory is Yamaha’s primary collateral source for repayment of the flooring loans, it demands immediate payment of SOT obligations.

18. Under floor plan financing, Yamaha requires a dealer to pay the unpaid balance of any flooring loan with respect to the sold inventory at or near the date on which the inventory was sold, leased, or placed into use by the dealer. Failure to comply with this payment obligation constitutes a breach of the financing agreements. If inventory is sold, leased, or otherwise un-accounted for, and the outstanding balance is not paid off as required, the inventory is deemed SOT. In addition to payment of flooring loans as inventory is sold, the dealer must pay interest on the total principal balance of all the flooring loans. Interest is due on a monthly basis.

19. Yamaha is harmed when a dealer sells inventory SOT because Yamaha’s collateral is gone. A SOT is a serious breach of the financing agreement because the dealer’s debt to Yamaha becomes unsecured—Yamaha cannot recover inventory sold to a customer in the ordinary course of business under 11 M.R.S.A. § 9-1320.

### B. *Inventory Financing Agreement*

20. On or about February 28, 2024, the Dealerships entered into a multi-dealer Inventory Financing Agreement (the “IFA”). A copy of the IFA is attached to this Complaint as **Exhibit 1** and incorporated by reference.

21. The IFA is a binding and enforceable contract.

22. Under the IFA, Yamaha agreed, from time to time, and solely at Yamaha's discretion, to provide Dealer financing to enable the Dealerships to purchase inventory and for other approved purposes. The length of term and interest for each loan made under the IFA, along with other conditions of the loan, are to be agreed on a transactional basis, subject to the general terms and conditions under the IFA.

23. Under the IFA, and to secure its obligations under the IFA owed to Yamaha, the Dealerships granted Yamaha a security interest in:

> all personal property of Dealer, whether such property or Dealer's right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and wherever located, including, without limitation, all Accounts, Inventory, Equipment, other Goods, General Intangibles (including without limitation, Payment Intangibles), Chattel Paper (whether tangible or electronic), Instruments (including, without limitation, Promissory Notes), Deposit Accounts, Investment Property, Letter-of-Credit Rights and Documents, and all Fixtures of Dealer, and all products and Proceeds (including, without limitation, insurance proceeds) of the foregoing, and all accessions to, substitutions for and all replacements of any of the foregoing. Without limiting the foregoing, Collateral includes Dealer's right to all Vendor Credits. Similarly Collateral includes, without limitation, all books and records, electronic or otherwise, which evidence or otherwise relate to any of the foregoing property, and all computers, disks, tapes, media and other devices in which such records are stored. For purposes of this Section 6(b) only, capitalized terms used in this Section 6(b) which are not otherwise defined in this Agreement shall have the meanings given to them in Division 9 of the California Uniform Commercial Code ("UCC").

(collectively, the "Collateral.")

24. Yamaha perfected its security interests in the Collateral by filing UCC-1 financing statements with the Offices of the Secretary of State of Massachusetts and New Hampshire.

25. On October 11, 2018, as instrument number 1810110001424, Yamaha filed a UCC-1 financing statement relating to MOMS Inc. with the New Hampshire Secretary of State. A copy of Yamaha's UCC-1 financing statement, as amended and continued, is attached as **Exhibit 2** and incorporated by this reference.

26. On July 21, 2021, as instrument number 202179433580, Yamaha filed a UCC-1 financing statement relating to Middlesex LLC with the Massachusetts Secretary of State. A copy of Yamaha's UCC-1 financing statement, as amended and continued, is attached as **Exhibit 3** and incorporated by this reference.

27. On January 2, 2024, as instrument number 202406714400, Yamaha filed a UCC-1 financing statement relating to Northampton LLC with the Massachusetts Secretary of State. A copy of Yamaha's UCC-1 financing statement, as amended and continued, is attached as **Exhibit 4** and incorporated by this reference.

28. On January 3, 2023, as instrument number 2301030001426, Yamaha filed a UCC-1 financing statement relating to Wheel Freedom with the New Hampshire Secretary of State. A copy of Yamaha's UCC-1 financing statement, as amended and continued, is attached as **Exhibit 5** and incorporated by this reference.

29. Under the IFA, the Dealerships are in default of their obligations to Yamaha if, amongst other things, the Dealerships fail to timely make any payment owed to Yamaha under the IFA.

30. Under the IFA, upon default by the Dealerships, Yamaha is entitled to immediate possession of the Collateral, and the Dealerships are obligated to deliver the Collateral to Yamaha upon request in the manner designated.

31. The IFA provides that in the event of the Dealerships' default, Yamaha may accelerate and declare immediately due and payable the unpaid balance of all indebtedness owing Yamaha, together with accrued interest and charges, without notice.

32. The IFA further provides that, irrespective of any default, all obligations owed by Dealer to Yamaha "are repayable by Dealer upon demand … ."

### C. *Defaults by the Dealerships*

33. In August 2026, Yamaha conducted a wholesale inventory audit of the Dealerships. Based on that audit, Yamaha determined that the Dealerships breached the IFA due to their failure to timely pay for sold inventory, past due part payments, and past due interest and other charges. At the conclusion of the audit, $426,441.00 was due and owing from the Dealerships to Yamaha for the defaults.

34. By letter dated September 8, 2026, Yamaha provided notice to the Dealerships that they were in default under the IFA. Yamaha demanded the Dealerships cure their defaults by close of business September 11, 2026. A copy of the September 8, 2026 letter is attached as **Exhibit 6** and is incorporated by this reference.

35. The Dealerships failed to timely cure the defaults. Consequently, Yamaha elected to accelerate the balance owed by the Dealerships under the IFA and to terminate the IFA.

36. Yamaha has conducted additional wholesale inventory audits of the Dealerships and determined that the SOT default has increased. As of September 16, 2026, the Dealership are in SOT default in the following amounts:

| Dealer | DBA | SOT Default |
|---|---|---|
| Wheel Freedom LLC | Freedom Cycle | $11,562.00 |
| Motorcycles of Manchester, Inc. | MOMS Manchester | $94,213.00 |

| | | |
|---|---|---|
| MOMS Middlesex LLC | MOMS North Chelmsford | $10,435.00 |
| Motorcycles of Manchester, Inc. | MOMS Foxboro | $20,332.00 |
| Motorcycles of Manchester, Inc. | MOMS Topsham | $48,385.00 |
| MOMS Northampton LLC | MOMS Northampton | $3,510.00 |
| Motorcycles of Manchester, Inc. | MOMS Enfield | $58,000.00 |
| Motorcycles of Manchester, Inc. | MOMS Jericho | $18,614.00 |
| | | $265,051.00 |

37. Yamaha has demanded that the Dealerships pay the past due amounts owing on their obligations, but despite this demand, the Dealerships have failed and refused to timely do so.

38. Yamaha has performed all conditions, covenants and promises required of it in accordance with the terms and conditions of the IFA.

39. The Dealerships defaulted under the IFA by failing to timely cure its repayment obligations owed to Yamaha.

40. As a result of the Dealerships' defaults, Yamaha exercised its rights under the IFA to accelerate all loan balances and declare all amounts immediately due and owing.

41. As of September 16, 2026, the Dealerships' total indebtedness owed to Yamaha under the IFA include the following sums:

Inventory Principal Balance: $2,352,367.40

SOT Default: $265,051.00

Warranty Registered[1]: $152,199.00

[1] Yamaha receives notice that certain inventory items (for example, a motorcycle) have been registered to a customer. Registration occurs at the dealership level and only after the item has been sold. Accordingly, when Yamaha identifies these Warranty Registered items, it understands that the items have been sold but not yet paid for, constituting an additional category of SOT Default.

| | |
|---|---|
| SPP[2] Due: | $35,413.25 |
| Charges[3]: | $11,530.29 |
| Suspense Funds[4]: | ($22,430.83) |
| **Total Amount Due:** | **$2,794,130.11** |

42. By the terms of the IFA, the Dealerships agreed to pay reasonable attorneys' fees and costs incurred by Yamaha in enforcing its rights thereunder. By reason of the Dealerships' defaults it has become necessary for Yamaha to employ the undersigned counsel to commence and prosecute this action and Yamaha is entitled to recover its attorneys' fees and costs incurred herein.

**COUNT I**
**(Replevin)**

43. Yamaha hereby incorporates by reference as though fully set forth herein the foregoing paragraphs.

44. Under the IFA, Dealerships granted to Yamaha a security interest in all of the Collateral.

45. By reason of the Dealerships' defaults as alleged above, and pursuant to the terms of the IFA, Yamaha is entitled to immediate possession of the Collateral, including all powersports inventory, attachments and accessories thereto, and all other property described above in which Yamaha has a security interest.

46. The Dealerships remain in wrongful detention of the Collateral in defiance of Yamaha's rights thereto and the cause of detention, according to Yamaha's knowledge,

[2] "SPP" refers to Scheduled Parts Payments, relating to parts and accessories.
[3] "Charges" refers to current and past due interest and fees due under the IFA.
[4] Funds held in "Suspense" refers to a temporary holding account for money received from a dealership that cannot immediately be applied to a specific inventory loan.

information, and belief, is due to the Dealerships' apparent but wrongful claim of possessory interest in the Collateral.

47. Yamaha is informed and believes and thereon alleges that a portion of the inventory and other Collateral in which Yamaha has a security interest are located at the Dealerships' place of business at 70 Topsham Fair Mall Rd., Topsham ME 04086.[5]

48. As of September 16, 2026, the total value of the Collateral believed to be located within this District at the above-referenced locations, including the Dealerships' inventory subject to Yamaha's security interest is at most $345,100.00. This value is calculated by taking the invoice value of the Collateral which remains in the possession of the Dealerships  A list of Yamaha's Collateral, including a description of the Serial/VIN numbers, model numbers and outstanding balance is attached to this complaint as **Exhibit 7** and incorporated by this reference.

49. Yamaha is informed and believes and thereon alleges that the collateral in which Yamaha has a security interest have not been taken for a tax, assessment or fine pursuant to statute, or seized under any execution against the property of Yamaha.

50. Yamaha is entitled to immediate possession of the Collateral. Yamaha claims the value of the Collateral not delivered to the officer by virtue of the enforcement of an order of replevin.

**<u>COUNT II</u>**
**(Specific Performance)**

51. Yamaha incorporates by reference all previous paragraphs in this complaint.

[5] Yamaha is informed and believes that its Collateral relating to the Dealerships is also located in Massachusetts, New Hampshire and Connecticut. Yamaha is in the process of filing similar lawsuits in those jurisdictions to (1) assert breach of contract claims, and (2) seek replevin orders relating to its Collateral located outside of Maine.

52. Yamaha is authorized to demand that the Dealerships assemble the Collateral and make it available to Yamaha at such place or places as Yamaha shall reasonably request as the Dealerships are required to do under the terms of the IFA. (Ex. 1, §12.)

53. The Dealerships expressly agreed that they would assemble the Collateral and deliver it, or otherwise make it available, to Yamaha upon demand.

54. Due to the defaults specified above, Yamaha has demanded that the Dealerships assemble and deliver the Collateral to it.

55. Despite Yamaha's demand, the Dealerships have failed, neglected and refused to turn over the Collateral.

56. Yamaha seeks specific performance of those portions of the IFA that require the Dealerships and its agents to assemble and deliver to Yamaha all of the Collateral.

**COUNT III**
**(Injunctive Relief)**

57. Yamaha hereby incorporates by reference as though fully set forth herein the foregoing paragraphs.

58. The Dealerships' wrongful conduct in failing to turn over to Yamaha the Collateral it in which Yamaha has a security interest has caused and will continue to cause great and irreparable injury to Yamaha unless and until enjoined and restrained by order of this Court. Yamaha is in danger of great and irreparable injury because the Dealerships' retention of the Collateral allow it to use Yamaha's Collateral for purposes other than repaying the obligations owed to Yamaha, resulting in a dissipation of the Collateral. The Collateral in the Dealerships' continued possession continues to depreciate in value, causing a corresponding depreciation of Yamaha's Collateral securing the Dealerships' obligations.

59. Yamaha has no adequate remedy at law for the injuries which it will suffer if the Dealerships retain the Collateral in defiance of Yamaha's rights because the solvency and ability of the Dealerships to pay damages is in grave doubt and it will be impossible for Yamaha to determine the precise amount of damages it will suffer if the Dealerships' conduct is not restrained and enjoined.

60. Yamaha is also in danger because the Collateral is rolling stock and can be easily removed and hidden.

## REQUESTED RELIEF

WHEREFORE, Yamaha requests judgment against the Defendants as follows:

(a) On Count I, for possession of all Collateral, and other personal property in which Yamaha has a security interest, to be assembled and delivered by the Dealerships and that the Court issue an Order for Writ of Replevin, ordering the U.S. Marshal to assist Yamaha, and/or its agents, in taking the Collateral from the Dealerships' premises;

(b) On Count II, for Specific Performance under the IFA requiring the Dealerships to assemble the Vehicles and other Collateral and make them available to Yamaha for repossession;

(c) On Count III, for a temporary restraining order, preliminary injunction and permanent injunction, each prohibiting the Dealerships and their principals, agents, employees and other representatives from selling, diverting, commingling, depositing, spending or otherwise disposing of proceeds of the lease, sale or other disposition of the Collateral in which Yamaha has a security interest, and from doing anything with the proceeds and other income of same, other than paying them over to Yamaha or depositing the same into Court;

(d) For costs of suit herein;

(e) For reasonable attorneys' fees; and

(f) For such other and further relief as to the Court may deem just.

DATED: September 17, 2026

Respectfully submitted,

*/s/ Bodie B. Colwell*
Bodie B. Colwell, Esq.
Preti Flaherty, LLP
One City Center
PO Box 9546
Portland, ME 04112-9546
(207) 791-3000
*bcolwell@preti.com*

*and*

Andrew Elliott, Esq. (pro hac vice pending)
Stinson LLP
595 Market Street, Ste. 2600
Sand Francisco, CA 94102
415-677-5542
*andrew.elliott@stinson.com*

*Counsel for Plaintiff*

*YAMAHA MOTOR FINANCE CORPORATION, U.S.A.*

# **VERIFICATION**

Jon Grant, of full age, hereby verifies as follows:

1. I am the Commercial Asset Compliance and Audit Manager of Yamaha Motor Finance Corporation, U.S.A., and I am duly authorized to execute this verification on Plaintiff's behalf.

2. I have reviewed the foregoing Verified Complaint, and every factual allegation contained therein is true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing statements made by me are true. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

September 16, 2026

Jon Grant